

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

March 30, 1992

Ms. Georgia Flint
Acting Commissioner
Texas Department of Insurance
P. O. Box 149104
Austin, Texas 78714-9104

Opinion No. DM-100

Re: Whether an insurance company released from supervision or conservatorship may deduct from its premium tax liability fees paid for cost of rehabilitation (RQ-201)

Dear Commissioner Flint:

Your predecessor as commissioner asked whether fees Texas collected under section 17 of article 21.28-A of the Insurance Code from an insurer "rehabilitated" by the State Board of Insurance, are allowable as a credit against premium taxes payable by the insurer under article 4.10 of the Insurance Code.

Article 4.10 requires certain insurance companies to pay to the commissioner of insurance, for transmittal to the state treasurer, an annual tax on gross premium receipts. Section 13 of article 4.10 of the Insurance Code provides:

> The amount of all *examination and evaluation* fees paid in each taxable year to or for the use of the State of Texas by an insurance carrier shall be allowed as a credit on the amount of premium taxes due under this article except as provided by Article 1.28 of this code.[1] Any credit allowed by the provisions of this section is in addition to any other credits allowable by statute. (Emphasis added.)

Article 21.28-A provides for the mechanisms of "supervision" and "conservation" of an insurance company determined by the commissioner of insurance 1) to be insolvent, 2) in a condition hazardous to the public or its policy holders, 3) to

---

[1] Section 2 of article 1.28 provides that certain examination expenses of a domestic insurer's books, records, etc., located outside of this state are not allowable as a tax credit.

have exceeded its powers or failed to comply with the law, or which has consented to such supervision or conservation. The purpose of such supervision and conservation is the preservation of the insurer's assets and the "rehabilitation" of the insurer. Ins. Code art. 21.28-A, § 1. Section 17 of article 21.28-A provides in pertinent part:

> The State Board of Insurance may collect fees from any entity . . . that is successfully rehabilitated by the board. The fees shall be in amounts sufficient to cover but not to exceed the costs of rehabilitation of that entity. The board shall use the fees for the sole purpose of the rehabilitation of the entity . . . . Fees collected under this subsection shall be deposited in and expended through the State Board of Insurance Operating Fund.

We find nothing in article 21.28-A or elsewhere in state law specifically providing for the allowance of article 21.28-A rehabilitation fees as a premium tax credit. The issue is whether the provision of section 13 of article 4.10 for allowing "examination and evaluation fees" as premium tax credits encompasses such rehabilitation fees. In our opinion, it does not.

"Examinations" are regular inquiries into the "financial condition" of insurance companies generally, their "ability to meet [their] liabilities, as well as [their] compliance with the laws of Texas." Ins. Code art. 1.15, § 1. As such, examinations are clearly distinct from the article 21.28-A procedures of "supervision" or "conservation" of troubled insurers which give rise to the fees assessed to cover the cost of rehabilitation which are at issue here. Article 1.04, section (g), in providing that the state board of insurance may use its own examiners or engage other persons or firms to perform examinations and that examination expenses incurred are to be paid by the company, specifically refers to "examination fees" as allowable credits against a company's premium tax liability. *See also id.* art. 1.16 (providing for the insurance commissioner's assessment of companies for the cost of examinations). We think it quite apparent that "examination fees" in article 4.10 refers to fees assessed in connection with "examinations," not to those fees arising from the distinct rehabilitative procedures of supervision and conservation under article 21.28-A.

The scope of the term "evaluation fees" as used in article 4.10, section 13, is more problematic. Notably, when first adopted in 1951 as part of article 7064, V.T.C.S., the provision, otherwise virtually identical to the current one, read

"valuation" rather than "evaluation." Acts 1951, 52d Leg., ch. 402, § XV, at 711-12. The bill transferring article 7064 to the Insurance Code in 1981 continued to use the term "valuation." Acts 1981, 67th Leg., ch. 389, § 36, at 1782. However a separate 1981 bill amending article 7064 changed the word to "evaluation." Acts 1981, 67th Leg., ch. 844, at 3214 (the latter bill as introduced had used the word "valuation;" but the committee substitute which was adopted used "evaluation"). We find nothing in the legislative history indicating what, if any, substantive change was intended by the 1981 change from "valuation" to "evaluation." *Compare* Ins. Code art. 4.11, § 8 (providing that "examination and *valuation* fees paid" by life, health and accident insurance companies are creditable against their premium taxes). *See generally* Attorney General Opinions V-1003 (1950); V-967 (1949) (provisions for "examination and valuation fee" credit against premium taxes for life, accident and health insurance companies under former article 7064a, now in article 4.11 of the Insurance Code).

It appears that the process of examining an insurance company's "financial condition and its ability to meet its liabilities," Ins. Code art. 1.15, § 1; *see supra* p. 2, itself entails "valuation" or "evaluation" of their assets. Sections 1 and 2 of article 1.15, specifically refer to the board's determining the "value" or "market value" of certain company assets as part of an examination. It may be that the "valuation" or "evaluation" fees referred to in the provisions of section 13 of article 4.10 as allowable premium tax credits are simply those portions of "examination fees" attributable to the valuation component of examinations.[2]

We do not think it necessary, however, to determine here exactly what the reference in section 13 of article 4.10 to "valuation" or "evaluation" fees encompasses, since it does not appear to relate to rehabilitation fees assessed under article 21.28-A, section 17.

Websters defines "evaluate" as "to determine or fix the value of," and "valuation," similarly as "the estimated or determined market value of a thing." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 429, 1303 (1987). The rehabilitative procedures of supervision and conservation imposed on troubled insurance

---

[2]We note that section A(28) of article 4.07 authorizes the State Board of Insurance to charge a $10 fee "for valuing policies of life insurance, and for each one million of insurance or fraction thereof." It would not appear however that "evaluation fees" in article 4.10, section 13, refers to this article 4.07 fee, since article 4.10 does not apply to life insurance companies. *See* Ins. Code art. 4.10, § 2; *see also id.* art. 3.28 (annual valuation of life insurance company reserves).

companies by the commissioner of insurance under article 21.28-A involve substantially more than "valuation" or "evaluation." When a company is placed under supervision, the commissioner may appoint a "supervisor" and may require that various actions of the company -- for example, conveyances, investments, lending, borrowing, mergers, cancellation of policies -- be taken only with the approval of the commissioner or the supervisor. The commissioner may require the company to comply with "lawful orders" of the commissioner within a specified time. Ins. Code art. 21.28-A, §§ 3, 4. If the commissioner determines that supervision is inadequate to accomplish the company's rehabilitation, he may appoint a conservator, through whom to "operate" the company. The conservator may "take all necessary measures to preserve, protect, and recover any assets" of the company and may, with the approval of the commissioner reinsure the company's policies, transfer company reserves to the reinsuring company. *Id.* § 5. If rehabilitated "the company may be returned to management or new management" under appropriate conditions. *Id.* § 9. Section 5, similarly to section 17, provides for the commissioner's assessing against the assets of the rehabilitated company "[t]he cost incident to the supervisor's and conservator's service." *Id.* § 5.

The legislature could not have had article 21.28-A rehabilitation costs in mind when it first adopted in 1951 the provisions now in article 4.10 for the tax credit for "examination and valuation fees" since the provisions of article 21.28-A, including that in section 5 for assessing companies' the "cost incident to the supervisor's and conservator's service," were first enacted only in 1967. Acts 1967, 60th Leg., ch. 281. The specific provisions of section 17 of that article for the commissioners assessing rehabilitated companies' "fees ... to cover ... the costs of rehabilitation" were not adopted until 1989. Acts 1989, 71st Leg., ch. 1082, at 4387. Nor do we think that in adopting the provisions of article 21.28-A, the legislature would have considered the rehabilitative procedures there provided for to be within the scope of the word "valuation" or "evaluation." If the legislature had intended that article 21.28-A rehabilitation fees be creditable against premium taxes, we think it likely that it would have specifically so indicated. *Compare* Acts 1957, 55th Leg., ch. 499, at 1457 (section (g) of article 1.04 of the Insurance Code specifically providing that examination costs paid by a company directly to private persons or firms are allowable as tax credits "just as examination fees are credited when the Board uses its own salaried examiners").

In support of our conclusion that article 21.28-A rehabilitation fees are not allowable as premium tax credits under section 13 of article 4.10, we note that you say that it has been the administrative practice of the board, since the adoption in

1967 of the article 21.28-A provisions for the commissioner's assessing rehabilitation costs, to disallow them as premium tax credits. Courts ordinarily give considerable deference to the construction placed on laws by the agency charged with their administration, particularly where the construction has been a long standing one. *See* 67 TEX. JUR. 3d *Statutes* § 155 (1989).

## SUMMARY

Rehabilitation fees assessed insurance companies rehabilitated by the State Board of Insurance under article 21.28-A of the Insurance Code are not within the premium tax credit allowed by Insurance Code article 4.10, section 13 for "examination and evaluation fees."

Very truly yours,

**DAN MORALES**
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by William Walker
Assistant Attorney General